STATE, NEW YORK AND LONG BRANCH RAILROAD COM-
PANY, PROSECUTOR, PLAINTIFF IN ERROR, v. GORDON
DRUMMOND ET AL., DEFENDANTS IN ERROR.

1. Platforms laid by a railroad company along its track, for freight or
   passengers, are not of such character, or ordinarily so essential to the·
   enjoyment of the franchise of the company, that they may not, in sub-
   servience to the public necessity, be removed in laying a public road.
2. An owner dedicating his land to public use, may place such limita-
   tions upon the gift, and subject it to such conditions and restrictions
   as he shall determine, and its acceptance will be subject to such condi-·
   tions and imposed limits.
3. By the act of March 25th, 1881, (*Pamph. L.*, ·p. 291,) it is declared
   unlawful to lay a public road across a railroad within five hundred
   feet of an existing public road crossing the road-bed and track of the
   railroad. *Held*, that the burden was upon the company to show the·
   existence of a crossing within the prohibited distance, and that it
   failed in making such proof.

In error to the Supreme Court. For opinion of the Supreme
Court, see 16 *Vroom* 511.

For the plaintiff in error, *John S. Applegate.*

For the defendant in error, *Chilion Robbins* and *F. G.
Burnham.*

. The opinion of the court was delivered by

KNAPP, J.   This litigation has its origin in proceedings to·
lay a public road in Asbury Park.   In matters of procedure,
the requirements of the Road act seem to have been observed
by all concerned in any duty respecting the particular road,
no error appearing therein.   But, in laying out the road, it
was made to cross the railroad track of the plaintiff in error,
near to one of its depots, and, to some extent, the road inter-
fered with and made necessary the removal of certain plat-
forms laid for passengers and freight.   Plaintiff in error

asserts that this was an illegal exercise of power by the surveyors, to the injury of the railroad company.

In the act concerning roads, there is found a provision protecting dwelling-houses, market-houses or other public buildings from removal, in laying out roads. *Rev., p.* 1010, § .79. But, under no reasonable interpretation can the structures disturbed in laying out this road, be brought within the letter or spirit of this law.

The question of fact whether the platforms were outside or within the line of the company's railway, is of very little importance in this case. Conceding it to be proved that they are entirely within the railroad line, they are not of such character or so essential to the enjoyment of the franchises of the company, that they may not, in subservience to the public necessity and convenience, be removed out of the way of a public road.

The right of railroads and common highways to cross each other exists from necessity, and is indisputably established. *M. & E. R. R. Co.* v. *Central R. R. Co.,* 2 *Vroom* 205. And the claim cannot be yielded so that every unimportant erection on the roadway of a railroad, because useful or convenient to the company, shall suffice to bar off the important right of the people of the state to multiply and extend their common highways as necessity or public convenience may require. And our law has placed with the surveyors of the highways and chosen freeholders, on review, jurisdiction to determine, finally, whether such convenience and necessity exist. It was not unlawful to remove these platforms so far as was necessary in laying the road.

It is further objected that the road is laid within five hundred feet of another public road crossing the track and road-bed of the plaintiff in error, and is therefore forbidden to be laid by the terms of the act of March 25th, 1881. *Pamph. L., p.* 291. By that act, it is declared unlawful to lay a public road across a railroad within five hundred feet of an existing public road-crossing of the road-bed and track of

such railroad.   A proviso excludes from its operation incor‐
porated cities.

I shall not attempt to follow counsel in their discussion of
the question whether Asbury Park, which is incorporated as a·
borough, is a city within the meaning of the act just referred‡
to.   It is quite obvious that the characteristics which marked
the distinction between boroughs and cities in England, are
not present with us to serve such purpose.   The legislature;.
in conferring special corporate functions upon the towns of
the state, has designated them as boroughs or cities with little‐
reference to population, and apparently without regard to any
recognizable quality or attribute belonging to the corporation
created, or any peculiarity distinguishing the legislation defin‐
ing their powers and privileges.   City or borough would‡
therefore seem to be, with us, nothing· more than a title con‐
ferred by the legislature.

I readily assent to the view that exemption from the restric‐
tions found in the purview of the statute, would be more·
appropriate to the larger than the smaller towns, but I
should hesitate to say that a borough, so called, of any or·
what size, can be considered as within the term "incorporated
city."   Town is generic.   Of the genus, cities and boroughs
are species.   Had the exception been "incorporated towns,"·
Asbury Park would be in it, but when an act of legislation
speaks of "incorporated cities," the most obvious, if not·
necessary subjects of the application of such a law, are locali-·
ties that are cities by legislative designation.

But these reflections are not necessary in this case, as·
I agree with the Supreme Court that the facts, under the·
proofs, do not bring the case within the operation of the act
referred to.

Monroe avenue was a dedicated street, but was separated in·
two parts by the intervening width of the plaintiff's railroad..
The railroad company placed planking on its track, so that
travelers could cross from one part of the avenue to the other.
The nearest part of the planking was not within five hundred‡
feet of the new road.   The plaintiff claims that the prepara‐

tion mentioned for crossing its road, and the public use of it acquiesced in, was evidence of dedication of its roadway to public use as a thoroughfare joining the separate parts of the avenue, and such dedication was to the full width of the avenue. This would bring the two streets within the interdicted distance.

Now, I think that, where one owning lands at the end of a public street does or suffers acts indicative of an intent to carry such street over such lands, the strong presumption against him and in favor of the public would be in favor of uniformity and against the intent to cut down the dimensions of the extended road. It would be highly reasonable to attribute to him such design in the absence of some unequivocal sign disclosing a different purpose. But an owner dedicating his lands to public use, has the undoubted right to place such limitations upon the gift, and subject it to such conditions and restriction as he shall determine, and its acceptance will be subject to such conditions and imposed limits. *Woolwich on Ways* 13, 14; *Stafford* v. *Coyney,* 7 *B. & C.* 257. The grant of an easement in lands for a highway may prescribe its width and extent. If the intention to create such easement is to be proved by user, fences or other marks of boundary set for the purpose would define the extent of the dedication. The Supreme Court had before it no other evidence of the intent to dedicate any part of the railroad for a street, or of the width intended to be devoted to the public use, than the act of the company planking a narrow carriageway across its tracks, and the use of such planking by the public thereafter without objection. While this was evidence of an intent to dedicate a public right of passage across its track, of the width of the plank, the company could, at any time, have averred the design to grant no further, and with probable success, upon this evidence. Public officers of the borough would have been in great risk of committing a trespass, had they, on behalf of the public, attempted to go upon the railroad and extend the crossing to the width of the other parts of the avenue. In this condition of the evidence, the court below were fully

warranted in holding that the plaintiff in error had shown a limited dedication of its road-bed.

But if the evidence left the matter in any doubt, the result should have been the same.    The plaintiff in error, to defeat the public right to have the new road, was required clearly to prove the fact which it relied upon to gain that end, and could not justly expect to be aided in that purpose by a too favorable interpretation of evidence of its own creation.    If its design was as claimed here, such design could have been made entirely certain.

The error in the assessment was properly disposed of by the court below, in sending it back for correction.

The judgment of the Supreme Court should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, KNAPP, REED, SCUDDER, VAN SYCKEL, BROWN, COLE, PATERSON, WHITAKER.    10.

*For reversal* — None.